IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 2:06-CR-973 |
| vs. | ) | |
| | ) | **SENTENCING ORDER** |
| RASHAD LATRON KING, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for the purpose of sentencing defendant Rashad Latron King. For the reasons set forth below, the court grants the government's motion for an upward variance and sentences defendant to ninety-six months in prison, three years of supervised release, and a $100 special assessment.

## I. BACKGROUND

On September 13, 2006, a federal grand jury indicted defendant for being a felon in possession of a Taurus .357 caliber revolver and .357 caliber ammunition, all of which had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). On August 16, 2007, defendant pled guilty, without a plea agreement, to one count of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The United States Probation Office subsequently prepared a presentence report, to which defendant filed two objections. The defendant first objected to the classification of his prior conviction for pointing and presenting a firearm as a "violent felony" for sentencing purposes. Second, he objected to the use of his prior Involuntary

1

Manslaughter Alford plea as a predicate conviction under the Armed Career Criminal Act (ACCA). On September 21, 2010, the government filed a motion for variance and upward departure, arguing that a harsher penalty is required to address the sentencing objectives found at 18 U.S.C. § 3553(a)(2), and the sentencing guidelines calculations failed to adequately reflect defendant's criminal history.

On September 22, 2010, defendant appeared before the court for sentencing. During the hearing, defendant raised the same objections previously raised in response to the presentence report. Defendant also argued that a pending amendment to United States Sentencing Guidelines (U.S.S.G.) §4A1.1(e) would eliminate one criminal history point from his criminal history category calculation. However, defendant conceded that elimination of that point would have no impact on his current criminal history category (Criminal History Category V), thus rendering defendant's argument moot. Members of defendant's family were present in the courtroom, and his mother addressed the court. In addition, defendant addressed the court, apologizing for his actions and stating that he had changed for the better within the preceding forty-six months. At the conclusion of the sentencing hearing, the court overruled defendant's objections, granted the government's motion for an upward variance, and orally imposed the sentence of ninety-six months in prison, three years of supervised release, and a $100 special assessment. The court now issues this written order.

## II. DEFENDANT'S OBJECTIONS

Defendant first objects to Paragraph 17 of the presentence report, in which his July 2005 conviction for pointing and presenting a firearm, in violation of South Carolina

Code of Laws §16-23-410, was classified as a predicate "crime of violence" for purposes of §2K2.1(a)(4)(A). Defendant argues that the offense of Pointing and Presenting a Firearm is not a "crime of violence."

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. §4B1.2(a).

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. §4B1.2(a), Application Note 1.

"In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay v. United States, 553 U.S. 137, 141 (2008) (citing Taylor v. United States, 495 U.S. 575, 602 (1990); James v. United States, 550 U.S. 192, 208-09 (2007)). This method of determining whether a crime is a violent felony is referred to as the "categorical approach." Id. The Supreme Court "held that a 'violent felony' under the

3

residual clause of the ACCA must 'typically involve purposeful, violent, and aggressive' conduct." United States v. Byrd, No. 09-4499, 2010 WL 4386875, at *2 (4th Cir. Nov. 4, 2010) (quoting Begay, 553 U.S. at 144-45). "This holding is applicable to the definition of a 'crime of violence' under §4B1.2(a)(2)." Byrd, 2010 WL 4386875, at *2 (citing United States v. Seay, 553 F.3d 732, 738-39 (4th Cir. 2009)).

The crime at issue is found at South Carolina Code of Laws § 16-23-410, and it is entitled "Pointing a firearm at any person." The statute states, "It is unlawful for a person to present or point at another person a loaded or unloaded firearm." S.C. Code Ann. § 16-23-410.

Prior to the United States Supreme Court's decision in Begay, the Fourth Circuit held that the offense of pointing a firearm at a person under South Carolina law is a crime of violence because it "'involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense.'" United States v. Thompson, 891 F.2d 507, 509 (4th Cir. 1989) (quoting 18 U.S.C.A. § 16(b) (West Supp. 1989)). The court further held that this conclusion derived from "common sense." While acknowledging that the decision in Thompson significantly pre-dated Begay and related cases, this court must also recognize the Fourth Circuit's continued adherence to the same position in the post-Begay era. In United States v. Stewart, No. 09-4512, 2010 WL 1006915, at *1 (4th Cir. March 19, 2010), quoting Begay, 553 U.S. at 144-45, the court held that the defendant's prior conviction for pointing a firearm at another person involved "'purposeful, violent, and aggressive conduct.'" Therefore, his prior conviction was properly considered a "violent felony" under Begay and enhanced his sentence as an

4

armed career criminal. Id. In Byrd, the Fourth Circuit referenced a South Carolina Court of Appeals decision, In re Spencer R., 692 S.E.2d 569, 572 (S.C. Ct. App. 2010), in which that court determined that § 16-23-410 "necessarily involves 'purposeful, violent, and aggressive' conduct." Byrd, 2010 WL 4386875, at *3. Thus, violation of the South Carolina statute "still constitutes a 'crime of violence' under §4B1.2(a)(2), even after Begay." Id. Pursuant to the categorical approach set forth in Begay and Fourth Circuit precedent, this court finds that defendant's July 2005 conviction for pointing and presenting a firearm was properly classified as a "violent felony," or "crime of violence," for sentencing purposes under U.S.S.G. §2K2.1(a)(4)(A). Accordingly, defendant's objection is overruled.

Defendant's second and final objection of substance is that Paragraph 20 of the presentence report improperly qualified defendant's April 2009 Alford plea to an Involuntary Manslaughter charge as a predicate conviction under the ACCA. Defendant also asserts that an Alford plea does not fall within the definition of a "prior sentence" found at U.S.S.G. §4A1.2(a)(1). Defendant cites United States v. Alston, 611 F.3d 219 (4th Cir. 2010), in support of his objection. This objection is without merit for the following reasons.

First, the presentence report did not use defendant's Alford plea to establish a predicate conviction under the ACCA. The plea was counted as a prior conviction and prison sentence for the purpose of assigning criminal history points under U.S.S.G. §4A1.1(a): "Add **3** points for each prior sentence of imprisonment exceeding one year and one month." (Emphasis in original).

Section 4A1.2(a)(1) states that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." Pursuant to §4A1.2, Application Note 1, a

> *"[p]rior sentence" means a sentence imposed prior to sentencing on the instant offense*, other than a sentence for conduct that is part of the instant offense. See §4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct).
>
> . . . .

(Emphasis added). The Fourth Circuit has not addressed the issue of whether Alford pleas are accorded the same finality as adjudications of guilt; however, several other circuits have responded in the affirmative. See United States v. Mackins, 218 F.3d 263, 268 (3d Cir. 2000) ( "[W]e conclude that an Alford plea is, without doubt, an adjudication of guilt and is no different than any other guilty plea for purposes of §4A1.1."); Abimbola v. Ashcroft, 378 F.3d 173, 181 (2d Cir. 2004) ("An Alford plea *is* a guilty plea.") (emphasis in original); United States v. Delgado-Lucio, No. 05-2201, 2006 WL 1644721, at *3 (10th Cir. June 15, 2006) ("[A]n Alford plea is a guilty plea and properly considered as a prior criminal conviction for purposes of the Sentencing Guidelines.").

Second, defendant's reliance on Alston is misplaced. Alston may, in fact, support defendant's argument that Alford pleas do not necessarily count as predicate convictions

6

under the ACCA, but the Fourth Circuit also quoted the record from Alston's sentencing hearing, in which Alston admitted that "an Alford plea results in a conviction for criminal history purposes." Alston, 611 F.3d at 221.

On April 13, 2009, defendant entered an Alford plea, which resulted in a criminal conviction and a negotiated twenty-eight-month prison sentence. That sentence of imprisonment was obviously imposed prior to defendant's sentencing on September 22, 2010, and as a result, he properly received three criminal history points pursuant to §4A1.1(a). Defendant's second objection is, therefore, overruled.

### III. THE GOVERNMENT'S MOTION FOR VARIANCE OR UPWARD DEPARTURE

On September 21, 2010, the government filed a motion for variance or upward departure, arguing that "aggravating circumstances" justify an upward variance to achieve the objectives set forth in 18 U.S.C. § 3553(a)(2), or alternatively, that defendant's sentencing guidelines calculation under-represented defendant's criminal history category and the likelihood that he will commit crimes in the future. Mot. Variance 1-3. The court agrees that an upward variance is appropriate in this case.

> [I]n imposing a sentence after Booker, the district court must engage in a multi-step process. First, the must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure

7

or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in "checklist fashion"; "it is enough to calculate the range accurately and explain why (if the sentence lies outside it) the defendant deserves more or less."

United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006) (internal citations omitted).

The court must also "'make an *individualized* assessment based on the facts presented.'" United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 50 (2007)) (emphasis in original). "That is, the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." Id.

> Moreover, the district court must "state in open court" the particular reasons supporting its chosen sentence. 18 U.S.C. § 3553(c) (2006). In doing so, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."

Id. (quoting Rita v. United States, 551 U.S. 338, 356 (2007)).

The advisory sentencing guideline range for defendant, as calculated by the United States Probation Office, is forty-six to fifty-seven months in prison. The statutory maximum penalty for the offense is 120 months in prison. The court finds that the upper end of the advisory guideline range is inadequate to satisfy the sentencing objectives listed under § 3553(a)(2); therefore, the court upwardly varies and imposes a sentence of ninety-six months to accomplish that task.

At defendant's sentencing hearing on September 22, 2010, the court articulated the following factors under § 3553(a)(2) which merit an upward variance: (1) to reflect the seriousness of the offense committed by defendant, to promote respect for the law,

8

and to provide just punishment (§ 3553(a)(2)(A)); (2) to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)); and (3) to protect the public from further crimes of defendant (§ 3553(a)(2)(C)).

The crime for which defendant is being sentenced is a serious offense. After police officers responded to a domestic dispute between defendant and his girlfriend inside the North Tower of the Medical University of South Carolina hospital, they discovered defendant had an outstanding warrant. When the officers began to place defendant under arrest, he attempted to flee, but was apprehended. The officers discovered a fully-loaded Taurus .357 Magnum revolver in defendant's right front pocket, at which time defendant attempted to flee again. The court notes with concern that this type of behavior was not a one-time occurrence.

Defendant is twenty-six years old. He has had two juvenile convictions and ten adult convictions, four of which were convictions for violent crimes. Within the last ten years, he has been convicted of interfering with officers, failure to stop for a blue light, simple assault, pointing and presenting a firearm, attempted burglary 2nd degree, resisting arrest, and involuntary manslaughter. He has also been arrested for kidnapping. The simple assault conviction, pointing and presenting a firearm conviction, kidnapping arrest, attempted burglary 2nd degree conviction, and the instant federal offense were all related to defendant's disputes with either women with whom he had a relationship, or his own siblings. Alarmingly, all of these offenses, with the exception of the simple assault conviction, involved guns. Moreover, the arrests and convictions occurred chronologically in that order. These violent offenses were followed by defendant's

conviction on April 13, 2009, for involuntary manslaughter, a crime in which he shot and killed a man in Berkeley County, South Carolina. Defendant's willingness to resort to violence is clearly escalating over time.

The court is also deeply concerned that defendant failed to comply with his bond conditions following his arrest for pointing and presenting a firearm and kidnapping in January 2004. A bench warrant was issued in January of the following year; however, not before defendant committed the attempted burglary 2nd degree in July 2004. Not surprisingly, defendant failed to comply with the bond conditions following the July 2004 arrest. Defendant also failed to comply with the state probation conditions related to his July 2005 conviction for pointing and presenting a firearm.

The court finds that an upward variance is necessary to punish defendant for the seriousness of the instant offense and to promote respect for the law. Furthermore, an upward variance is necessary to specifically deter defendant from committing similar crimes in the future and to protect the community from defendant's increasingly violent criminal ways.

## IV. CONCLUSION

After calculating and considering the advisory sentencing guidelines, and having also considered the relevant statutory sentencing factors contained in 18 U.S.C. § 3553(a), it is the judgment of the court that the defendant, Rashad Latron King, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of ninety-six months. The government's motion for an upward variance is thereby **GRANTED**.

Upon release from imprisonment, defendant shall be placed on supervised release for a term of three years. Within seventy-two hours of release from custody of the Bureau of Prisons, defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, defendant shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d). Defendant shall also comply with the following special conditions:

1. Defendant shall submit to random drug testing, to include urinalysis, and if deemed necessary, participate in treatment for substance abuse as approved by the United States Probation Officer until such time as he is released from the program by the United States Probation Officer.

2. Defendant shall enroll in and complete an educational program as approved by the United States Probation Officer with the objective of obtaining his G.E.D., unless already obtained during his period of incarceration.

3. Unless otherwise gainfully employed, defendant shall complete a vocational training program as approved by the United States Probation Officer with the objective of learning and obtaining lawful employment.

4. Defendant shall participate in a program of mental health counseling and/or treatment, including anger management, as deemed necessary by the United States Probation Officer until such time as defendant's release from the program is approved by the United States Probation Officer.

It does not appear that defendant has the ability to pay a fine; therefore, the fine is

waived. Defendant shall pay the mandatory $100 special assessment fee due and payable immediately.

      **AND IT IS SO ORDERED**.

      **DAVID C. NORTON**
      **CHIEF UNITED STATES DISTRICT JUDGE**

**December 8, 2010**
**Charleston, South Carolina**